UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**EMMET BURRLE, JR.**                                                                                   **CIVIL ACTION**

**VERSUS**                                                                                                       **NO. 12-739**

**PLAQUEMINES PARISH GOVERNMENT**                                              **DIVISION "3"**

**ORDER**

On May 15, 2013, defendant's Motion for Summary Judgment [Doc. #28] came on for oral hearing before the undersigned. Present were Courtney Wilson on behalf of plaintiff and Randall Kleinman and Keene Kelly on behalf of defendant. After the oral hearing, the Court took the motion under advisement. Having reviewed the motion, the opposition and the case law, the Court rules as follows.

**I.      Background**

Defendant Plaquemines Parish Government ("defendant") employed plaintiff Emmett Burrle, an African-American, as a laborer in the Flood Control/Heavy Equipment Department. Burrle began working on September 13, 2002. Burrle consistently received "above average" or "exceeds expectations" ratings on his evaluations, and he received corresponding merit pay increases. In 2005, defendant promoted Burrle to foreman and gave him a raise.

In June 2008, defendant hired Scott Lott as Director of Operations. Lott had authority over

Burrle's department. Lott implemented strict policies that limited worker down-time, enforced disciplinary procedures, reduced costs and held all employees accountable in the process. There is no dispute – and defendant admits – that Lott's micro-management of the employees under him caused stress in the workplace.

Burrle found it difficult to implement Lott's new policies. He resisted "writing up" former co-workers who were now under his authority. Lott became concerned about this and decided to personally supervise Burrle's department. However, Lott still consistently approved of Burrle's favorable performance evaluations and pay increases.

In October 2008, Burrle began to see a doctor about various illnesses, depression and family- and job-related stress. Burrle reported to the doctor that he had become much more curt and short-tempered with his employees. In July 2009, Burrle informed his doctor that he had trouble with his staff.

In September 2009, defendant awarded Burrle a four-step increase based on his performance appraisal. Defendant then promoted Burrle to Supervisor – over three white candidates – in December 2009. Lott continued to approve of Burrle's favorable performance evaluations but noticed that he had difficulty managing his former co-workers. Lott discussed this with him. Also in December 2009, Burrle approached Lott to inform him that he needed money for a pressing family matter. Lott personally loaned the money to him.

In July 2010, the Superintendent went on permanent sick leave, and Burrle thereafter acted in his place. In August 2010, Burrle complained to his doctor of intense stress at home and at work. Later in August, Burrle took leave under the Family Medical Leave Act ("FMLA") for four days. Burrle later informed his doctor that his employees were "pushing the envelope."

In January 2011, Burrle further complained to his doctor of depression and work-related stress. Burrle took a second leave from January 26, 2011 through February 19, 2011 to treat his depression. Despite all of this, Lott promoted him to temporary Superintendent, effective March 21, 2011. Burrle did not apply for the Superintendent position, and he was to return to his position as Supervisor on the hiring of a new Superintendent.

Burrle then resigned without notice on April 15, 2011. On the Employment Exit Interview forms, he refused to state his reasons for doing so. The Director of Human Resources, Wanda Buras, understood Burrle's reasons for resignation as his dislike of Lott's management style, his devotion to a fishing business on the side, and his belief that he would receive money from the BP oil spill. Burrle in fact received $25,000.00 as part of the BP oil spill settlement. Burrle never complained of racial discrimination – either formally through defendant's grievance policy or informally with the Human Resources and Civil Service directors.

Defendant hired David Smith as Burrle's replacement. Smith also resigned, complaining of Lott's management style. Burrle then submitted an application for the job from which he had resigned with full knowledge that Lott was still the Director of Operations. Defendant accepted Burrle as an eligible candidate and interviewed him. In November 2011, defendant hired David Regier as the new Superintendent.

In December 2011, Burrle filed a claim for unemployment benefits with the Louisiana Workforce Commission ("LWC"). Burrle's stated reason for resigning was his inability to deal with the stress of the job. He stated in his application that he had approached Parish President Billy Nungesser, who informed Burrle that he could not fire Lott as he had no one to replace him. Burrle then stated that he felt forced to resign before a physical confrontation occurred. Burrle did not

3

mention racial harassment or discrimination in the application. The LWC denied his application.

On December 23, 2011, Burrle filed a charge of discrimination against defendant with the Equal Employment Opportunity Commission ("EEOC"). In that charge, Burrle alleged race discrimination, not for harassment on the job, but for failing to rehire him. He alleged that defendant had hired a less qualified white applicant.

Burrle appealed the denial of his claim for unemployment benefits. At the hearing, Burrle relayed a story in which a person not employed by defendant used the "N" word in his and Lott's presence. He complained that Lott did nothing about it. The LWC awarded him unemployment benefits.

The Superintendent that succeeded Smith resigned after six weeks, and Burrle again applied for the job. Burrle did not interview for the position, and his application lapsed. Burrle also abandoned his claim with the EEOC.

On March 18, 2012, he sued defendant under 42 U.S.C. § 1981.

**II.     Law and Analysis**

    **A.     Summary Judgment Standard**

Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in [his] favor." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The moving party bears the burden of

establishing that there are no genuine issues of material fact.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325; *Lavespere*, 910 F.2d at 178. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See Celotex*, 477 U.S. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial. *See id.* at 325; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

### B.     The *McDonnell Douglas* Framework

The familiar framework established by the United States Supreme Court for allocating the burdens of proof and persuasion in a Title VII case guides the Court here as it does in all such cases. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) (setting out the order and allocation of proof in private employment discrimination cases under Title VII). The Fifth Circuit applies the same elements to Section 1981 discriminatory-treatment claims as it does to Title VII claims. *See Barkley v. Singing River Elec. Power Ass'n*, 433 Fed. Appx. 254, 259 (5th Cir. 2011). To survive summary judgment on a racially hostile-work environment claim, a plaintiff must establish that: (1) the employee belongs to a protected group; (2) the employee was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term condition or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Celestine v. Petroleos de Venezuela SA*, 266 F.3d 343, 353 (5th Cir. 2001); *Watts v. Kroger Co.*, 170 F.3d 505,

509-10 (5th Cir. 1999); *Jones v. Flagship Int'l*, 793 F.2d 714, 719-20 (5th Cir. 1986).

However, this well-established five-part test underwent a revision in 1998, when the Supreme Court ruled that in Title VII – and thus Section 1981 – harassment cases, where the harassment is allegedly committed by a supervisor with immediate (or successively higher) authority over the harassment victim, the plaintiff-employee needs to satisfy only the first four of the elements listed above. *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). Once the plaintiff makes the four-part showing that they have been harassed by a supervisor, the "employer is subject to vicarious liability to a victimized employee" for the supervisor's conduct. *Id.*

If a plaintiff succeeds in making a prima facie case, the burden then shifts to the defendant to proffer a legitimate rationale for the underlying employment action. *Aldrup v. Caldera*, 274 F.3d 282, 286 (5th Cir. 2001). If the defendant makes this showing, the burden shifts back to the plaintiff to demonstrate that the employer's articulated reason for the employment action was a pretext for retaliation. *Id.*

### C. Burrle's Claims

Burrle raises two claims: (1) supervisory racial harassment (*i.e.*, hostile work environment); and (2) constructive discharge. To analyze Burrle's racially hostile work environment claim, the Court must apply a "totality-of-the-circumstances test that focuses on the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating . . . and whether it unreasonably interferes with an employee's work performance." *Jackson v. Wilson Welding Serv., Inc.*, Civ. A. No. 10-2843, 2012 WL 12807, *5 (E.D. La. Jan. 4, 2012) (quotations omitted). Relief will be granted only when the workplace is "permeated with 'discriminatory intimidation, ridicule and insult' that is 'sufficiently severe or pervasive to alter the conditions of the

victim's employment and create an abusive working environment.'" *Id.* (citing *Nat'l R.R Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

Although, "discriminatory verbal intimidation, ridicule, and insults may be sufficiently severe or pervasive to support evidence of a hostile work environment claim . . . simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id.* (citing *Howard v. United parcel Serv.*, 447 Fed. Appx. 626 (5th Cir. 2011) (quotations omitted)).  Conduct "that is not severe or pervasive enough to create an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive – is beyond Title VII's purview." *Id.* (citing *Harris*, 510 U.S. at 21).  Section 1981 does not impose a "general civility code," and when the standards are "properly applied, they will filter out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language.'" *Id.*

To succeed on a constructive discharge claim, Burrle is required to show "'working conditions . . . so intolerable that a reasonable person in the employee's position would have felt compelled to resign.'" *Aryain v. Wal–Mart Stores Tex. LP.*, 534 F.3d 473, 480 (5th Cir. 2008) (quoting *Penn. State Police v. Suders*, 542 U.S. 129, 141 (2004)).  Constructive discharge claims of the kind brought by Burrle are essentially hostile work environment claims but more extreme. *Suders*, 542 U.S. at 146; *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 444 (5th Cir. 2011) ("A constructive discharge claim "requires a greater severity or pervasiveness of harassment than the minimum required to prove a hostile work environment." (internal quotation marks omitted)).  The Fifth Circuit therefore requires a plaintiff who advances constructive discharge claims to prove the

existence of an aggravating factor. *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001). Such factors include:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibility; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

*Dediol*, 655 F.3d at 444.

Burrle's claims fail for numerous reasons.[1] First, there is absolutely no evidence in the record that Lott ever discriminated against Burrle – or anyone – on the basis of his race, and especially to the extent that any such alleged discrimination would force Burrle's constructive discharge. Burrle admitted at his deposition that he has never heard Lott use the "N" word or any racially-derogatory language. (Ex. 4 at p. 34:14-25). And although many employees have complained about Lott's management style, no employee has ever formally or informally complained about Lott exhibiting racist behavior. (Ex. 1 at ¶ 67).

And while Burrle testified that Lott wanted him to fire all of the black employees under him, the make-up of Burrle's department belies such an assertion. When Burrle was Temporary Superintendent, 85 per cent of his department was black. (Ex. 4 at p. 31:1-12). Two years later, Buras testified that the department is approximately 90 per cent black. (Ex. 21 at p. 20:14-16). As defendant notes, if Lott has been firing black employees, then he has also been hiring them.

---

[1] While defendant spends much of its memorandum arguing that Burrle failed to notify his supervisors of any racial discrimination, the Court need not address the argument. As noted above, the *Faragher* Court held that where, as here, the plaintiff alleges that an immediate or successively higher supervisor commits the alleged racially discriminatory conduct, the plaintiff need not prove this factor. The Court finds that Lott was Burrle's immediate or successively higher supervisor, and thus, Burrle does not need to meet this requirement.

8

Moreover, Burrle can not point to one black employee that either he or Lott fired.

Burrle also attempts to point to other instances during which one of defendant's employees used the "N" word in an attempt to portray a hostile work environment. He points to one situation during which a white employee, a Mr. Badalamenti, used the "N" word during an argument with Randy Brooks, a black operator. Not only did this incident occur before Lott's tenure with defendant, but Brooks used the grievance procedure at defendant's Human Resources Department, and was satisfied with the outcome of such procedure. (Ex. 26 at ¶ 15). As defendant notes, the incident with Brooks and Badalementi is an example of how the grievance procedure properly works. Burrle was the foreman over Brooks and Badalamenti at the time and had the authority and the direct responsibility to address the situation, but he waited over four years to raise it here.

Burrle points to other isolated instances as well. Burrle contends that Lott racially discriminated against blacks when he ordered Burrle to write up a black foreman, a Mr. Taylor. Ex. 4 at pp. 110:19-25, 111:1-18; Ex. 3 at ¶ 41). But as defendant notes, Lott only ordered Burrle, the then Supervisor, to write up Taylor because he failed to write up a white operator, a Mr. Landry, for failing to follow instructions. (*Id.*)

Burrle also described an instance in which someone not employed by defendant used the "N" word in his and Lott's presence. (Ex. 4 at pp. 57:22-25, 58:1-3). Burrle contends that Lott sanctioned the use of the "N" word by agreeing with the man. But Burrle has been unable to find any witness to corroborate his story, and Lott testified that he never heard the "N" word nor did he agree with it. (Ex. 3 at ¶ 38; Ex. 29 at p. 34:1-18). Lott testified that had he heard the "N" word, he would have addressed it as a violation of defendant's anti-discrimination policy. (*Id.*). And, as defendant correctly notes, Burrle, in a supervisory position at the time, was responsible for reporting

9

such behavior, but he failed to do so. (Ex. 3 at ¶ 38).

The only evidence that Burrle has advanced to support his allegations is just that, allegations. Burrle submits no evidence to the Court to support his allegations apart from an unsigned, unsworn "Statement of Controverting Facts."[2] Self-serving allegations are insufficient to preclude the granting of summary judgment, especially in a case such as this one in which defendant submitted overwhelming evidence contradicting Burrle's statements. *Cf. Vais Arms, Inc. v. Vais*, 383 F.3d 287, 294 (5th Cir. 2004) (concluding that self-serving statements were insufficient to overcome summary judgment, particularly when faced with "overwhelming evidence" in opposition); *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001) (affirming summary judgment for the plaintiff when defendant's only evidence in opposition was his own "self-serving allegations"); *BMG Music v. Martinez*, 74 F.3d 87, 91 (5th Cir. 1996) (explaining that a "conclusory, self-serving statement" by defendant was insufficient to create a triable issue of fact).

While the working conditions under Lott may not have been ideal, the overwhelming weight of the evidence – including that from Burrle himself – establishes that a hostile work environment due to his race did not exist at his place of employment. Thus, Burrle can not establish a hostile

---

[2] The weekend before the oral hearing, and after two extensions of time to file his opposition, Burrle filed a signed declaration in the record along with his exhibits. On the merits, the signed declaration still only advances Burrle's self-serving allegations, rejected above. In addition, none of the exhibits supports plaintiff's allegations of racial harassment, except perhaps one. Plaintiff attaches the Declaration of David Smith [Doc. #50-2], in which Smith states that Lott engaged in some alleged discriminatory behavior. Smith signed the declaration at a meeting with Burrle and his counsel a year after he had resigned. The statement was first hand-written by counsel for plaintiff, signed by Smith and then typed by counsel for plaintiff. Preemptively, defendant filed the Affidavit of Smith [Doc. #48-1], in which he refutes all statements contained in plaintiff's declaration. In the declaration, Smith states that while he signed plaintiff's counsel's notes after the meeting, his signature was not intended to reflect the accuracy of the notes nor as a sworn statement by him. [Doc. #48-1 at ¶ 12]. The declaration does not track the language of 28 U.S.C. § 1746, and the Court thus strikes it.

work environment because he has failed to adduce evidence of racial harassment, much less racial harassment so severe and pervasive that a reasonably objective person would find a hostile work environment existed under Section 1981.  And because a constructive discharge claim requires a greater severity or pervasiveness of harassment than the minimum required to prove a hostile work environment, and the Court has concluded that that lower standard has not been met, Burrle's constructive discharge claim fails as well.[3]

### III.  Conclusion

For the foregoing reasons,

**IT IS ORDERED** that defendant's Motion for Summary Judgment [Doc. #28] is GRANTED.

New Orleans, Louisiana, this 23rd day of May, 2013.

                        **DANIEL E. KNOWLES, III**
                        **UNITED STATES MAGISTRATE JUDGE**

---

[3]  In addition, the Court notes that Burrle failed to submit any evidence of an aggravating factor, as required under Fifth Circuit precedent.